## DAVIS v. McDOWELL.

### No. 5743.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 4, 1938.

Rehearing Denied Nov. 9, 1938.

Writ of Certiorari and Review Denied
Jan. 10, 1939.

John F. Phillips, of Shreveport, for appellant.

Campbell & Campbell, of Minden, and Coleman & Morgan and Jack & Jack, all of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit for herself and on behalf of her five minor children to recover the sum of $5,000 for the death of her husband and the father of her minor children. Alton McDowell, B. M. McDowell, Earl W. Campbell and R. Louis McDowell were made defendants.

For a cause of action plaintiff alleged:

"That during the early part of the present year Arthur Carter and his wife, Willie Carter, lived and resided together near Doyline, Louisiana, and on or about the 6th day of April, 1937, Willie Carter left and abandoned her said husband and removed to the home of her brother, James Doston, who resided near the village of Blanchard, in Caddo Parish, Louisiana;

"That on the 8th day of April, 1937, R. L. McDowell, Alton McDowell, B. M. McDowell and the said Arthur Carter went to the home of James Doston for the purpose of inducing Willie Carter to return to the home of her said husband, but were unsuccessful and they all went away from said premises, leaving Carter's wife at the said place; she positively refusing to become reconciled to her said husband or returning to his home;

"That, realizing that Willie Carter could not be induced by ordinary peaceful persuasion to become reconciled to her husband and to return to his home, it was then decided between themselves, the aforesaid McDowells, to attempt to scare, frighten and intimidate the woman by making her believe that a warrant had been issued for her arrest, and that under said belief she, Willie Carter, would then return to her said husband and her former home;

"That Earl W. Campbell at that time had a commission as deputy sheriff which had been issued to him by O. H. Haynes, Sheriff of Webster Parish, Louisiana, and on or about the 8th day of April, 1937, he agreed to go with the said McDowells aforesaid to the place where Willie Carter was staying, 'in order to see if she would not come back home', and they did all go to the place, in Caddo Parish, which place was a farm owned by J. C. Powell and upon which place James Doston was employed and farming;

"That at some time during the said 9th day of April, 1937, the said defendants did agree and make a scheme and conspire among themselves to have Earl W. Campbell to assert that he was an officer, a dep-

uty sheriff, and that he had a warrant in his possession for the arrest of Willie Carter, and that, by virtue of said scheme and conspiracy they would scare, frighten and intimidate and kidnap the said Willie Carter and take her back with them to the home of her said husband;

"That Arthur Carter was at the time aforesaid employed on a farm belonging to Mrs. ———— McDowell, the mother of Alton McDowell, which farm was being supervised by Alton McDowell and that said Alton McDowell wanted Willie Carter back on the place to work on the farm and cook and keep house for Arthur Carter;

"That in carrying out the scheme and conspiracy aforesaid the defendants, on the evening of April 9th, 1937, went to the home of J. C. Powell, at Blanchard, Louisiana, at which time and place Alton McDowell talked with the said Powell, informing Powell Earl W. Campbell was a deputy sheriff and that he had a warrant for the arrest of Willie Carter, and wanted permission from Powell to go upon his place where Willie Carter was staying to serve said warrant, to arrest the said Willie Carter and remove her back to the place from which she had left;

"Petitioner now shows that, believing that a warrant had been issued for the arrest of Willie Carter and that Earl W. Campbell was an officer having the right to legally arrest the said woman, he readily gave his consent and permission for defendants to go to his place and arrest the said woman and return her from whence she had come;

"Petitioner now shows that defendants had no warrant for the arrest of Willie Carter; that their sole and exclusive purpose was to unlawfully scare, intimidate and kidnap the said woman and force her by virtue of being scared and intimidated, to go with them, all of which was an unlawful agreement and conspiracy entered into between said defendants for such purpose;

"That after leaving the home of J. C. Powell, as aforesaid, the defendants proceeded to the home of James Doston, where Willie Carter was then staying, and while at said place, on the 9th day of April, 1937, R. Louis McDowell, without just cause, did shoot, kill and murder T. C. Davis, the husband of your petitioner and the father of the minor children hereinbefore named;

"That the killing and murdering of the said T. C. Davis was perpetrated without lawful cause, was unjustified, and was done by R. Louis McDowell as a result of and in carrying out the agreement, scheme and conspiracy previously agreed to among defendants."

The following allegations were made in an amended petition:

"That the said T. C. Davis was a tenant farmer upon the plantation of J. C. Powell and resided near the house wherein James Doston was residing at said time, at which place the said murder aforesaid was committed.

"That on the evening of April 9, 1937, after T. C. Davis had quit work for the day, he put the team with which he was plowing on said day in the barn on said plantation, and had started to go to the house where he and his family were residing; and that, in going from the barn where he had left his team to his own home it was necessary to pass the home of the said James Doston; and when he arrived at the home of said Doston he went into Doston's house where Doston and his wife and Willie Carter, and the defendants were congregated, at which time a controversy was going on between James Doston and the defendants concerning an alleged warrant which the defendants, or some one of them, claimed to have had, authorizing the arrest of Willie Carter.

"That during the said controversy the wife of James Doston went into another room and got a lamp, which she handed to T. C. Davis to hold, in order that James Doston might have sufficient light to read the alleged warrant, and while he was holding the lamp and without any act of aggression on his part, R. L. McDowell did shoot, kill and murder him, the said T. C. Davis, who had committed no act or cause to justify said murder.

"That the sole purpose of defendants in going to the home of James Doston on said occasion was to kidnap, force and coerce Willie Carter to return with them to the home of her husband, and that the murder of T. C. Davis was committed by R. L. McDowell in carrying out said conspiracy previously entered into between the defendants, as set forth in plaintiff's original petition.

"Petitioner shows that T. C. Davis was a mere visitor at the home of James Doston at the time aforesaid, and while the said conspiracy was not entered into by and be-

tween as to him, but in attempting to carry out the said conspiracy the said T. C. Davis was murdered without provocation or any act of aggression on his part, and for which act defendants are liable in solido."

In a second supplemental petition, Oscar H. Haynes, Sheriff of Webster Parish, and his bondsman were made parties defendant and judgment prayed for in solido against them and the four original defendants. The pertinent allegations of this petition are as follows:

"Petitioner shows that the said Earl W. Campbell was on the 9th day of April, 1937, and prior thereto duly appointed and commissioned as a deputy sheriff in and for the Parish of Webster, State of Louisiana, by Oscar H. Haynes, Sheriff of said Parish;

"Petitioner now shows that she has been informed and therefore alleges that the said Sheriff, Oscar H. Haynes, aforesaid, is bonded and was on and prior to April 9, 1937, by the Great American Indemnity Company of 1 Liberty Street, New York N. Y., a bonding company authorized under the laws of this state to make and execute surety bonds, and that said company did make and execute a surety bond for the said Oscar H. Haynes, Sheriff of Webster Parish, under the provisions of the laws of this state and especially as required of and under the provisions of Section 2, Act 52 of the General Assembly of the State of Louisiana for the year 1880, said bond being in the sum of $6000.00 of lawful money of the United States, a certified copy of same being attached hereto and made a part hereof by reference.

"That at the time and place set forth in the original and supplemental petition heretofore filed by your petitioner against the defendants named therein, the said Earl W. Campbell was beyond the jurisdictional limits of his authority, his said authority being limited and confined to the Parish of Webster, State of Louisiana, and he had no legal authority to act as deputy sheriff or other officer or to presume to act as such in the Parish of Caddo.

"Petitioner now shows that at the time the said Earl W. Campbell and Alton McDowell went to the home of J. C. Powell, at Blanchard, Louisiana, prior to the going to the home of James Doston, and upon his arrival at the home of the said Doston and continuously while at said home, he, the said Earl W. Campbell, acted and pretended to act in the capacity of a deputy sheriff,

claiming to have a warrant for the arrest of Willie Carter, which was false and untrue, he having no warrant issued and/or delivered to him for the arrest of the said woman.

"That the murder of the said T. C. Davis by the said R. Louis McDowell was committed by him during the carrying out of the conspiracy entered into by and between himself, Alton McDowell, B. M. McDowell and Earl W. Campbell while the said Earl W. Campbell pretended to act under the color of his said office, a deputy sheriff under commission as such issued to him by the said Oscar H. Haynes, Sheriff of Webster Parish, Louisiana.

"That having issued and caused to have issued a commission to the said Earl W. Campbell as deputy sheriff of Webster Parish, the said Oscar H. Haynes, Sheriff of Webster Parish, Louisiana, was and is liable to your petitioner for the illegal acts of said deputy sheriff aforesaid and for his malfeasance in office at said time aforesaid.

"That the said Great American Indemnity Company of 1 Liberty Street, New York, N. Y., having made and executed bond aforesaid, as the surety for the said Oscar H. Haynes, is liable under its said bond to your petitioner for all of the damages owing to petitioner and claimed by her for her own self and for her minor children aforesaid."

All the defendants filed exceptions of no cause and no right of action. The lower court overruled the exceptions as to the four original defendants, and as to Oscar H. Haynes, Sheriff of Webster Parish, and his bondsman, the Great American Indemnity Company, the exceptions were sustained.

Plaintiff has appealed from the judgment sustaining the exceptions as to the last two defendants. The case as to the four original defendants is not before us.

■■ The rule of law applicable to the issues of this case is set forth in Sanders v. Humphries et al., 143 La. 43, 78 So. 168, and is as follows [page 169]:

"The liability of the surety in this case, therefore, depends upon whether the plaintiff has alleged sufficient facts to show that the deputy sheriff violated, or failed to perform faithfully, a duty required of him by law. The surety is liable as well for a deputy sheriff's violation of an official duty,

or for his failure to perform such duty faithfully, as for the sheriff's violation, or failure of faithful performance of official duty. But neither the sheriff nor the surety on his official bond is responsible for a wrongful act of a deputy sheriff unless it was done in violation or in an unfaithful or improper performance of an official duty.

"The allegation that the reckless assault and shooting were done while Humphries was on duty as a deputy sheriff, and while he was acting as a deputy, agent, servant and employé of the sheriff, is not the same as to say that the acts were done in violation or in an unfaithful or improper performance of an official act.

"In so far, however, as these allegations might be construed to mean that the assault and shooting were the result of a reckless performance of an official act of the deputy sheriff, the allegations manifestly express only the opinion or conclusion of the plaintiff in that respect. And that opinion or conclusion is, in effect, contradicted by the further allegation that the assault and shooting were done maliciously. Without any allegation of fact from which the court or jury might judge whether the wrongful act of the deputy sheriff was done in the performance of an official act, the petition does not disclose a cause of action against either the sheriff or the surety on his official bond."

Applying this rule to the alleged facts of plaintiff's petition as above quoted, it is clear that a cause of action has not been set forth and it is likewise clear that plaintiff is without a right of action, for the petition in plain language negatives the fact that the deputy sheriff was in the performance of an official duty at the time of the injury complained of by plaintiff or that he ever had any official duty to perform in the case. She alleged he was a party to a conspiracy with the three Mc-Dowells to commit a crime and in committing the crime intended originally, another and different crime was committed. Neither the Sheriff nor his bondsman is responsible for the wrongful act of the deputy sheriff unless it was done in violation or in an unfaithful or improper performance of an official duty. The petition alleges an unlawful act from its very incipiency and at no time was the deputy sheriff cloaked with official authority to act in this case.

The judgment of the lower court is correct, and is affirmed, with costs.